IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND

TWANNA YOUNG,

    Plaintiff

v.                                    Case No.: RWT 10cv532

ANDRE SCOTT, *et al.*,

    Defendants.

## MEMORANDUM OPINION

Plaintiff Twanna Young has brought this action to quiet title and declaratory and injunctive relief to determine the validity of a deed of trust, claiming that she is a victim of the Metropolitan Money Store scheme and the rightful owner of the real property located at 4150 Applegate Court, Unit 7, Suitland, Maryland 20746 (the "Property").[1] Defendant Huesman, Jones and Miles, LLC ("Huesman") moves to dismiss the complaint and for summary judgment on the grounds that Plaintiff lacks standing to assert a claim under the Fair Debt Collection Practices Act ("FDCPA"), 15 U.S.C. §§ 1692-1692p (2006). For the reasons set forth below, Defendant's motion will be denied.

## BACKGROUND

The Metropolitan Money Store was formed in Maryland on May 12, 2005, Compl. ¶ 39, purportedly for the purposes of offering foreclosure consultation and credit services to

---

[1] Plaintiff's counsel, William Carroll Johnson, Jr., has commenced at least six other similar actions in this Court on behalf of other purported victims of the Metropolitan Money Store scheme. *Whiting v. Deloatch*, No. 09cv3426 (D. Md. Dec. 23, 2009); *Frazier v. Rolon*, No. 09cv3427 (D. Md. Dec. 23, 2009); *Queen v. Walker*, No. 09cv3428 (D. Md. Dec. 23, 2009); *Humphrey v. Brown*, No. 09cv3429 (D. Md. Dec. 23, 2009); *Barmer v. Walker*, No. 10cv916 (D. Md. Apr. 13, 2010); *Davis v. Fordham*, No. 10cv1141 (D. Md. May 7, 2010).

financially distressed homeowners in Maryland, Virginia, and the District of Columbia, *id.* ¶ 19. The corporation and affiliated entities were in reality a criminal enterprise. *Id.* ¶ 15.

Members of the criminal conspiracy targeted individuals who owned and had substantial equity in their homes but were facing foreclosure because of their inability to make monthly mortgage payments. *Id.* ¶ 42. Without consent or knowledge of the homeowners, the conspirators allegedly transferred title to straw purchasers by forging the deeds of trust. *Id.* ¶ 43. The conspirators then obtained fraudulently inflated loans in order to extract the maximum available equity from the homes. *Id.* ¶ 45. At settlements, the conspirators also imposed fees and required seller contributions in excess of industry standards. *Id.* Although the victim homeowners were told that the withdrawn equity would be used to pay their mortgages, *id.* ¶ 44, the conspirators instead converted the funds, *id.* ¶ 45. The straw purchasers were paid $10,000 for participating in the scheme. *Id.* ¶ 43.

Plaintiff Young allegedly possessed and resided in the home at issue in this action, *id.* ¶ 54, and enlisted the services of Metropolitan Money Store to refinance the Property, *id.* ¶ 55. Without Plaintiff's knowledge or consent, the conspirators allegedly forged the deed to the Property in order to transfer title to the straw purchaser, Defendant Andre Scott. *Id.* ¶¶ 58, 59, 61, 64, 65, 69. The conspirators then allegedly submitted a fraudulent loan application to New Century Mortgage in the name of Defendant Scott, *id.* ¶ 67, 70, 74, 78, obtained an inflated loan, *id.* ¶ 70, and stripped the Property of its equity, *id.* ¶¶ 73, 80.

Defendant Wells Fargo Bank N.A. ("Wells Fargo") subsequently purchased the loan from New Century. *Id.* ¶ 68, 74. The loan eventually became delinquent and Defendant Wells Fargo purportedly mailed notices to Defendant Scott at the Property. *Id.* ¶ 86. The loan then

went into default and Defendant Wells Fargo engaged Defendant Huesman on or around November 10, 2009 to collect the debt and foreclose on the property. *Id.* ¶¶ 86, 89, 93.

Plaintiff allegedly first learned of the fraud after receiving a notice of foreclosure. *Id.* ¶ 92. Even after Plaintiff contacted Defendant Huesman to alert them of the fraudulent conveyance, Huesman purportedly continued to pursue foreclosure remedies against Defendant Scott. *Id.* ¶¶ 94-98.

## PROCEDURAL HISTORY

Plaintiff commenced this action on March 3, 2010. Paper No. 1. The complaint contains the following four counts:

<u>Count I</u>: Declaration and Injunction for Quiet Title and Right to Petition Court for Reformation of Deed;

<u>Count II</u>: Declaration and Injunction for Determination of Rights Under Mortgage Notes;

<u>Count III</u>: Declaration and Injunction for Determination of Rights Under Deed of Trust; and

<u>Count IV</u>: Violation of the FDCPA.

Compl. ¶¶ 100-127. In Counts I, II, and III, Plaintiff seeks declaratory and injunctive relief in the form of a declaration stating, *inter alia*, that (i) the deed reflecting the transfer of the Property from Plaintiff Young to Defendant Scott is void *ab initio*, Compl. ¶ 107.d; (ii) Plaintiff has complete, sole, and uninterrupted ownership and rights to the Property, *id.* ¶ 107.c; (iii) Plaintiff may petition the Court for reformation of the deed, *id.* ¶ 107.b; (iv) Plaintiff did not enter into mortgage agreements with New Century Mortgage, assigned to Defendant Wells Fargo, *id.* ¶ 113.a; (v) Defendant Wells Fargo's recourse for breach of contract lies against Defendant Scott only, *id.* ¶ 113.b; (vi) the Doctrine of Equitable Subrogation does not lie against Plaintiff and the Property due to the forgery, *id.* ¶ 113.c; and (vii) any liens established by the deed of trust created by the mortgage notes entered between Defendant Scott and New Century Mortgage, and

3

assigned to Defendant Wells Fargo, are void, *id.* ¶ 120.a. In Count IV, Plaintiff seeks an award of damages, costs, and attorney's fees against Huesman for alleged violations of the FDCPA in connection with its debt collection efforts. *Id.* ¶ 127.

On May 10, 2010, Defendant Huesman filed a motion to dismiss Count IV or for summary judgment. Paper No. 20.

## STANDARD OF REVIEW

To survive a motion to dismiss, "a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 129 S. Ct. 1937, 1949 (2009) (quoting *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 129 S. Ct. at 1949. "But where the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged – but it has not 'show[n]' – 'that the pleader is entitled to relief.'" *Id.* at 1950 (quoting Fed. R. Civ. P. 8(a)(2)).

## ANALYSIS

In its Motion to Dismiss and/or for Summary Judgment, Huesman contends that Plaintiff cannot maintain an action under the FDCPA because she was not the object of collection activity arising from consumer debt. Def. Huesman's Mot. to Dismiss 8-9. Huesman argues that only Defendant Scott has standing because the law firm directed its collection activities at her. *Id.*

In the Complaint, Plaintiff alleges that Defendant Huesman violated §§ 1692g(b), 1692e(2)(A), and 1692f(1) of the FDCPA. Section 1692g requires that a "debt collector" cease collection of a debt upon receipt of certain notifications by a "consumer." 15 U.S.C. § 1692g. The FDCPA defines a "consumer" as "any natural person obligated or allegedly obligated to pay any debt." *Id.* § 1692a(3). In contrast, §§ 1692e(2)(A) and 1692f(1) do not use the term

"consumer" but rather state that a debt collector may not use "any false, deceptive, or misleading representation or means," *id.* § 1692e, or "unfair or unconscionable means," *id.* § 1692f, to attempt to collect any debt. Courts have interpreted these provisions as permitting any aggrieved party to bring an action under the FDCPA. *See, e.g.*, *Montgomery v. Huntington Bank*, 346 F.3d 693, 697 (6th Cir. 2003) (analyzing § 1692e); *Eley v. Evans*, 476 F. Supp. 2d 531, 533 (E.D. Va. 2007) (construing §§ 1692e and 1692f).

Even though Huesman aimed its collection efforts at Defendant Scott, Plaintiff is the true party in interest because what she claims to be her property fraudulently serves as collateral for the delinquent mortgage loan. Because of the alleged fraud, Plaintiff stands in the shoes of Scott and Plaintiff's home may be sold to pay the debt Huesman has purportedly attempted to collect, if the Property is foreclosed upon. Moreover, Huesman allegedly continued its collection efforts *after* Plaintiff put the law firm on notice of the alleged fraud. Compl. ¶¶ 95-98. As a result, Plaintiff is a "consumer" as that term is defined in § 1692a(3) and has standing to bring an action under §§ 1692e and 1692f.

A more narrow interpretation of the FDCPA, particularly as applied to the factual allegations here, would be inconsistent with the purposes of the Act. Congress designed the FDCPA "to eliminate abusive debt collection practices by debt collectors, to insure that those debt collectors who refrain from using abusive debt collection practices are not competitively disadvantaged, and to promote consistent State action to protect consumers against debt collection abuses." 15 U.S.C. § 1692(e). When a fraud of the type alleged here has been perpetrated, only the victim of the fraud – not the purported straw purchaser – will have any incentive to stop abusive debt collection practices.

Accordingly, the Court concludes that Plaintiff may bring an action under the FDCPA against Defendant Huesman.

## **CONCLUSION**

For the foregoing reasons, the Court, by separate Order, will deny Defendant Huesman's Motion to Dismiss and/or for Summary Judgment (Paper No. 20).

July 22, 2010 /s/
Date Roger W. Titus
United States District Judge